**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

PRINCE ARORA,

      Petitioner,

      v.                                           Case No. 1:26-cv-01345 KWR-GBW

WARDEN, *Cibola County Correctional Center*,
TODD M. LYONS, *Acting Director of
Immigration And Customs Enforcement*,
JOEL GARCIA, *Acting El Paso Field Office
Director for Detention and Removal,
U.S. Immigration and Customs Enforcement,*
TODD BLANCHE, *Acting U.S. Attorney General, and*
MARKWAYNE MULLIN, *Secretary, U.S. Department
of Homeland Security*,

      Respondents.

## <u>ORDER DENYING HABEAS PETITION</u>

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas

Corpus (Doc. 1). Petitioner is a noncitizen in ICE detention. Petitioner received a bond hearing

under 8 U.S.C. § 1226(a).  However, Petitioner now requests that the Court order a second bond

hearing with the burden shifted to the Respondents, or his release. As explained below, Petitioner's

habeas petition is not well-taken and is therefore **DENIED**.

### BACKGROUND

Petitioner is a citizen of India in ICE custody at the Cibola County Correctional Center.

Pet. ¶ 8.

On June 30, 2019 Petitioner was admitted to the United States on a B-2 nonimmigrant visa. Pet. ¶ 14.  He was authorized to remain until December 29, 2019.  *Id.*  On June 5, 2025, Petitioner was arrested in New Jersey on charges of aggravated assault.  Pet. ¶ 16.  Petitioner's wife was the alleged victim.

On June 6, 2025, a Notice to Appear was issued by Respondents.  *Id.*  ¶ 17. On July 15, 2025, the Office of Essex County Prosecutor issued a letter to Petitioner's wife, stating that the office declined to pursue prosecution.  Pet. ¶ 20.

Petitioner requested and received a bond hearing. On September 12, 2025, the immigration judge denied Petitioner's request for release on the merits, reasoning:

> Respondent was arrested and charged with a domestic violence offense involving his spouse in June of 2025. Respondent's Counsel submitted a statement from the lead prosecutor that was directed to the Injured Party (Spouse) stating that the case would not be pursued but without a reason why the case was being "closed". Due to the uncertainty of the recent charge, the Court found the Respondent to be both a danger to the community and a flight risk.

Pet. ¶ 23. On October 10, 2025, Petitioner appealed the denial of bond.  Pet. ¶ 25. On October 24, 2025, the immigration judge issued a further memorandum, explaining in part as follows.

> In the instant matter, the Respondent was arrested on June 5, 2025, for the offense of Aggravated Assault - Strangulation against a family member. Form I-213 at 2 (Sept. 11, 2025). The Respondent, through counsel, informed the Court that his spouse was the alleged strangulation victim. The Respondent provided a letter from the Essex County Prosecutor, which states that they would not be pursuing prosecution. Bond Redeter. Req., Tab A at 6 (Sept. 5, 2025). However, the mere fact that the case was closed provides the Court with little insight into the circumstances surrounding the conduct for which the Respondent was arrested, or why the Prosecutor's Office decided not to prosecute the case. **It is the Respondent's burden to establish that he would not pose a danger to persons or property upon his release,** yet he has failed to provide any documentary evidence pertaining to the underlying incident. Significantly, the Respondent failed to provide a police report detailing the reason for the encounter and the subsequent arrest. Likewise, neither the Respondent nor his spouse-the alleged victim-provided affidavits that discuss the details of the underlying incident.

2

Pet. ¶ 26. The immigration judge further noted that Petitioner's spouse, the alleged victim, submitted an affidavit requesting that Petitioner be released. Doc. 1-4 at 5. But the immigration judge noted that the affidavit avoided discussing Petitioner's arrest or the alleged aggravated assault or strangulation, and instead focused on the need for his financial support. *Id.* at 5-6. The immigration judge was thus not confident that the spouse would be safe if Petitioner were released. *Id.* at 6.

The immigration judge also noted that, due to the serious criminal allegations, he is unlikely to be able to adjust his status, and therefore posed a flight risk. Doc. 1-4 at 6-7 (citing *Matter of Andrade*, 19 I&N Dec. at 490 ("A respondent with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who . . . has less potential of being granted such relief.")).

On December 29, 2025, the immigration judge entered an order finding Petitioner removable and ordering Petitioner removed to India. Doc. 6 at 5. On January 27, 2026, the BIA received Petition's appeal from that removal order. *Id.*

Thus, Petitioner received a bond hearing pursuant to 8 U.S.C. § 1226(a). Petitioner asserts that his detention violates 8 U.S.C. § 1226(a) because the immigration judge failed to place the burden of proof on flight risk and dangerousness on Respondents. He also asserts that his detention violates due process because the burden at the detention hearing was not placed on Respondents. Petitioner asserts that "given [his] prolonged detention, his right to due process of law under the Fifth Amendment requires that he should be provided with a new bond hearing at which the government bears the burden of proof to justify his detention by clear and convincing evidence." Doc. 1 at 2.

## DISCUSSION

3

## I.      Petitioner's statutory claim fails.

Petitioner asserts that the immigration judge violated 8 U.S.C. § 1226(a) by failing to place the burden on the Respondents.  The Court disagrees, and finds that Petitioner's statutory claim is not well taken.  Section 1226 does not mention the burden of proof at all.

Petitioner asserts a statutory violation.  When interpreting a statute, courts first "examine the statute's plain text" and "[a]bsent ambiguity, [the] analysis ends there." *United States v. Koerber*, 10 F.4th 1083, 1112 (10th Cir. 2021). Should the analysis continue, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co., Inc.*, 585 F.3d 1376, 1381(10th Cir. 2009) ("We also take into account the 'broader context of the statute as a whole' when ascertaining the meaning of a particular provision." (citation omitted)). Generally, the Court considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, only if the statutory language is ambiguous. *See, e.g.*, *Husted*, 545 F.3d at 1247 ("[I]t is a longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute.").

Section 1226(a), at issue here, does not mention the burden of proof.  It states in part: "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(a) gives Respondents discretion to detain, release on bond, or parole a noncitizen. Generally, the release or bond decision is discretionary. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.").

4

The text of § 1226(a) does not place the burden on the Respondents to justify detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (noting that "[n]othing in § 1226's text ... supports the imposition" of "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary").

Although the plain language of the statute fails to clarify who bears the burden, relevant regulations provide the following:

> Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.

8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) (2026). The phrase "provided that the alien must demonstrate to the satisfaction of the officer" indicates that the noncitizen bears the burden. This interpretation aligns with BIA precedent that found that the burden is on the noncitizen. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) ("The burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond."); *see also In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (B.I.A. 1999) ("Pursuant to 8 C.F.R. § 236.1(c)(8), the [noncitizen] must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings."). Therefore, the regulations place the burden on the noncitizen.

The Supreme Court has touched on burden allocation under § 1226(a), but the Court has merely noted that the text does not indicate when each party should bear the burden. *See Jennings*, 583 U.S. at 306 (noting that "[n]othing in § 1226's text ... supports the imposition" of "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary").

In sum, the statute does not place the burden of proof on Respondents. Therefore, Respondents did not violate § 1226(a).

Petitioner does not raise constitutional avoidance under this claim, and the Court does not *sua sponte* address it.

## II.    Petitioner's Due Process Claim fails.

Petitioner also assert that his prolonged detention without requiring the Respondents to bear the burden of proof at a detention hearing violates the due process clause of the Fifth Amendment. It appears that Petitioner asserts a procedural due process claim, as he cites the *Mathews* factors, and he does not expressly raise a substantive due process claim.

### A.  Petitioner's Procedural Due Process claim fails.

Petitioner's procedural due process claim fails on the second *Mathews* factor because he does not explain how, in his case, there was an risk of erroneous deprivation. To be sure, Petitioner summarily cites to this factor. Pet. ¶ 50.  But he does not apply the law to the facts of this case to analyze this factor.

Petitioner bears the burden of proof of showing that he is entitled to relief or a remedy. *See* 28 U.S.C. § 2241; *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (In § 2241 proceeding, "[t]he burden of proof was upon the petitioner to sustain these allegations."); *see also Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner."); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [petitioner] was *not* 'in custody in violation of the Constitution or laws or treaties of the United States' " under § 2241); *see also Smith v. Workman*, 550 F.3d 1258, 1273 (10th Cir. 2008) (noting that, in the context a *Brady* violation, the petitioner

6

"bears the burden of showing that the prosecution suppressed material evidence favorable" to the petitioner); *McDonald v. Feeley*, 535 F. Supp. 3d 128, 135 (W.D.N.Y. 2021) (in § 2241 proceeding challenging his immigration detention, petitioner bears burden of proving by preponderance of evidence that he is detained contrary to law).

Petitioner is also required to make arguments and present facts, and the Court need not do so on his behalf. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants) (quoting *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him."). Here, Petitioner did not carry his burden to cite to authority or facts in support of his position. The Court need not address complex issues of constitutional law without sufficient briefing, especially given that it is unclear whether he is entitled to relief. Thus, he has failed to carry his burden and his claim fails.

## B.      Alternatively, the procedural due process claim fails on the merits.

Alternatively, to the extent the Court is required to analyze this issue, the Court finds that the claim fails. This Court analyzed a similar issue in *Montero Cordova,* concluding that a petitioner was not entitled to burden-shifting at a bond hearing. The Court adopts and incorporates herein its reasoning in *Montero Cordova v. Noem*, No. 1:26-CV-00526-KWR-DLM, 2026 WL 867689, at *12-15 (D.N.M. Mar. 30, 2026) and denies Petitioner's request. As explained in

*Montero Cordova,* the *Mathews* factor do not warrant shifting the burden at any bond hearing to Respondents under the circumstances of this case.

The Court must examine the adequacy of the procedure to ensure that the deprivation meets the demands of the Constitution. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). In determining what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Court notes that Petitioner cites to some cases in which the burden was shifted to Respondents as a remedy for erroneously classifying the petitioner as mandatorily detained in violation of due process. *See* Pet. ¶ 52. Some of those cases are inapposite, as here Petitioner received a bond hearing under 8 U.S.C. § 1226(a). Therefore, at issue here is whether the due process clause requires that a Petitioner who has already received a bond hearing under § 1226(a) be given an additional bond hearing with the burden shifted to Respondents. The Court concludes it does not.

**First *Mathews* factor: Petitioner's interest.**

The first *Mathews* factor considers the private interest at stake. Petitioner's basic interest in being free from detention is at stake. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (finding that freedom from detention is "the most elemental of liberty interests"). However, Petitioner has already received the procedures authorized by Congress, a bond hearing under § 1226(a) where an

immigration judge concluded he was a flight risk and danger. Overall, this factor weighs in his favor.

**Second *Mathews* factor: the risk of erroneous deprivation and the value of additional safeguards.**

The second *Mathews* factor considers the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards. Here, Petitioner received a bond hearing under § 1226(a), at which the immigration judge concluded he was a flight risk and danger. Petitioner summarily argues there is a high risk of erroneous deprivation, as the burden to show flight risk or danger was not placed on Respondents. Pet. ¶ 50.

Petitioner has not demonstrated under the second *Mathews* that there was an erroneous deprivation of his rights in violation of the due process clause. Petitioner was arrested for aggravated assault on June 5, 2025. Pet. ¶ 16. The alleged victim was his wife. On July 15, 2025, the Essex County Prosecutor's office decided not to pursue prosecution. Pet. ¶ 20.

A bond hearing was held before an immigration judge. On September 12, 2025, the immigration judge denied Petitioner's request for release, reasoning:

> Respondent was arrested and charged with a domestic violence offense involving his spouse in June of 2025. Respondent's Counsel submitted a statement from the lead prosecutor that was directed to the Injured Party (Spouse) stating that the case would not be pursued but without a reason why the case was being "closed". Due to the uncertainty of the recent charge, the Court found the Respondent to be both a danger to the community and a flight risk.

Pet. ¶ 23. On October 10, 2025, Petitioner appealed the denial of bond. Pet. ¶ 25. On October 24, 2025, the immigration judge issued a further memorandum, explaining in part as follows.

> In the instant matter, the Respondent was arrested on June 5, 2025, for the offense of Aggravated Assault - Strangulation against a family member. Form I-213 at 2 (Sept. 11, 2025). The Respondent, through counsel, informed the Court that his spouse was the alleged strangulation victim. The Respondent provided a letter from the Essex County Prosecutor, which states that they would not be pursuing

> prosecution. Bond Redeter. Req., Tab A at 6 (Sept. 5, 2025). However, the mere fact that the case was closed provides the Court with little insight into the circumstances surrounding the conduct for which the Respondent was arrested, or why the Prosecutor's Office decided not to prosecute the case. **It is the Respondent's burden to establish that he would not pose a danger to persons or property upon his release,** yet he has failed to provide any documentary evidence pertaining to the underlying incident. Significantly, the Respondent failed to provide a police report detailing the reason for the encounter and the subsequent arrest. Likewise, neither the Respondent nor his spouse-the alleged victim-provided affidavits that discuss the details of the underlying incident.

Pet. ¶ 26. The immigration judge further noted that Petitioner's spouse, the alleged victim, submitted an affidavit requesting that Petitioner be released. Doc. 1-4 at 5. But the immigration judge noted that the affidavit avoided discussing Petitioner's arrest or the alleged aggravated assault or strangulation, and instead focused on the need for his financial support. *Id.* at 5-6. The immigration judge was thus not confident that the spouse would be safe if Petitioner were released. *Id.* at 6.

The immigration judge also noted that, due to the serious criminal allegations, he is unlikely to be able to adjust his status, and therefore posed a flight risk. Doc. 1-4 at 6-7 (citing *Matter of Andrade*, 19 I&N Dec. at 490 ("A respondent with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who . . . has less potential of being granted such relief.")).

The Court cannot say there is a risk of erroneous deprivation of his rights without additional safeguards. Notably, Petitioner fails to argue or explain how the result in this case was erroneous, or how there is a risk of erroneous deprivation without additional safeguards.

Petitioner already received the fundamental features of due process—notice and an opportunity to be heard. *See Mathews*, 424 U.S. at 333, 96 S.Ct. 893 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " (citations omitted)). Moreover, a bond hearing under § 1226(a) is generally a sufficient

10

process to mitigate the risk of erroneous deprivation. *See, e.g., Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022). Therefore, Petitioner has failed to carry his burden under the second factor to show a risk of erroneous deprivation of his rights.

       **Third *Mathews* factor: the Government's interest.**

The final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. When considering the Government's interest, the Supreme Court has instructed that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Detention has been deemed a valid part of sovereign prerogative "necessary to give effect to the provisions for the exclusion or expulsion of aliens." *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (citation modified). Thus, the Government's interest in enforcing its immigration policies is considerable.

Here, Petitioner does not fully analyze the third factor. Although the fiscal and administrative burdens of a burden-shifting requirement would likely be minimal, the legislature's silence on a burden-shifting requirement indicates that any judicially imposed burden-shifting requirement here would be displacing a congressional policy choice that the burden remain with Petitioner. *See E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 52 (2025) ("Statutory silence is generally 'inconsistent with the view that Congress intended to require a special, heightened standard of proof.'" (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991))). Thus, the significant weight afforded to the executive and legislature over immigration matters renders the third

11

*Mathews* factor favorable to Respondents. Respondents also have a strong interest in detention while the removal proceedings are pending. *Miranda v. Garland*, 34 F.4th 338, 364-65 (4th Cir. 2022). Removal proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character." *Wong Wing v. United States*, 163 U.S. 228 (1896). Thus, the Respondents' interest here is strong.

**Balancing of the *Mathews* factors.**

Balancing the *Mathews* factors, the Court concludes that Petitioner is not entitled to an additional bond hearing where the Respondents bear the burden of showing he is a flight risk or danger. In sum, Petitioner has not argued or demonstrated a risk of erroneous deprivation if the burden of proof were not shifted to Respondents at a bond hearing. Moreover, he did not account for the Respondents' substantial interest in detention pending removal proceedings. Considering the *Mathews* factors and Petitioner's arguments, the Court concludes that Petitioner has not demonstrated that he is entitled to burden-shifting at his bond hearing.

The Court notes that some persuasive cases are in line with the Court's reasoning, although there appears to be a circuit split on this issue. The Second Circuit held that detainees are entitled to an additional bond hearing with burden-shifting after their detention becomes prolonged. *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020). Similarly, the First Circuit concluded that, where a party received a bond hearing under § 1226(a), the district court did not err in ordering an additional bond hearing with the burden shifted to the Government to show dangerousness. In deciding that burden-shifting was necessary, the First Circuit noted the risk of lengthy or prolonged detention under § 1226(a) while a decision on removal is pending. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 29–30 (1st Cir. 2021). Thus, the First Circuit affirmed the district court's order of a new bond hearing where the Government bore the burden of proof.

On the other hand, the Third and Ninth Circuits found that § 1226(a) did not entitle the petitioner to an additional bond hearing with a shifted burden after detention becomes prolonged. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213–14 (9th Cir. 2022). Similarly, where a noncitizen already received a bond hearing under § 1226(a), the Fourth Circuit in *Miranda* reversed a district court's decision to order an additional bond hearing with the burden placed on the Government. *Miranda v. Garland*, 34 F.4th 338, 350 (4th Cir. 2022).

The Court agrees with the Third, Fourth, and Ninth Circuits, as explained in the balancing of the *Mathews* factors above. Despite the circuit split, the balancing of the *Mathews* factors is fact-specific, and in this case the *Mathews* factors do not favor ordering an additional bond hearing where the burden is shifted to Respondents.

Finally, the Court notes that Petitioner does not request an additional bond hearing without burden shifting, therefore the Court does not analyze whether his alleged prolonged detention warrants an additional bond hearing. Generally, petitioners who receive a bond hearing under 8 U.S.C. § 1226(a) may request additional bond hearings, and Petitioner does not assert that Respondents have refused to grant him additional bond hearings.

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is **DENIED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

13